IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHRISTINA HAGEMAN,            )
                             )
                Plaintiff,   )
                             )
vs.                          )         Case No. 07-1002-WEB
                             )
MICHAEL J. ASTRUE,[1]        )
Commissioner of              )
Social Security,             )
                             )
                Defendant.   )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On July 6, 2006, administrative law judge (ALJ) Michael R.

4

Dayton issued his decision (R. at 14-21).  Plaintiff alleges that his disability began on March 16, 2002 (R. at 14).  Plaintiff meets the insured status requirements through June 30, 2004 (R. at 16).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity at any time relevant to the decision (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: coronary artery disease (CAD), status post angioplasty with stents and an ejection fraction of 45%, and right shoulder rotator cuff tear (R. at 16).  The ALJ also determined that plaintiff's depression and migraine headaches are not severe impairments (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could perform past relevant work as a bookkeeper and a waitress/bartender.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III.  Did the ALJ err in finding that plaintiff's depression and migraine headaches were nonsevere impairments?**

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v.

Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v.
Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of
medical severity"). A claimant need only be able to show at this
level that the impairment would have more than a minimal effect
on his or her ability to do basic work activities.[2] Williams, 844
F.2d at 751. However, the claimant must show more than the mere
presence of a condition or ailment. If the medical severity of a
claimant's impairments is so slight that the impairments could
not interfere with or have a serious impact on the claimant's
ability to do basic work activities, the impairments do not
prevent the claimant from engaging in substantial work activity.
Thus, at step two, the ALJ looks at the claimant's impairment or
combination of impairments only and determines the impact the
impairment would have on his or her ability to work. Hinkle v.
Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had
an impairment and how severe it was during the time the claimant
alleges they were disabled. 20 C.F.R. § 404.1512(c),

---

[2]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3. Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir.
2004).

§ 416.912(c).  The evidence that a claimant has an impairment
must come from acceptable medical sources including licensed
physicians or psychologists.  20 C.F.R. § 404.1513(a),
§ 416.913(a).  Evidence from other medical sources, including
therapists, nurse-practitioners, and physicians' assistants, may
be used to show the severity of an impairment and how it affects
the ability to work.  20 C.F.R. § 404.1513(d)(1),
§ 416.913(d)(1).

Plaintiff has the burden of proof at step two.  However,
plaintiff has not provided any medical opinion evidence that her
mental impairments would have more than a minimal effect on her
ability to perform basic work activities.  In fact, the only
evidence in the record on this question is the consultative
examination of Dr. Michael Schwartz, who examined the plaintiff
on August 21, 2003 (R. at 226-227).  Dr. Schwartz stated the
plaintiff "has no current psychiatric symptoms which would
interfere with her functioning on the job or with her
interpersonal relations" (R. at 227).  For these reasons, the
court concludes that the ALJ's finding at step two that
plaintiff's depression is not a severe impairment is supported by
substantial evidence.

The ALJ also found that plaintiff's migraine headaches are
not a severe impairment because they are usually controlled with
medication and have not required emergency room visits (R. at

16).  Dr. Alex was asked to review materials on the plaintiff and complete interrogatories regarding plaintiff's condition (R. at 295).  In his response, Dr. Alex indicated that, in regards to plaintiff's migraine headaches, they are "controlled with medication" (R. at 300).  However, Dr. McKinley, a treating physician, stated on September 6, 2005 that plaintiff's use of nitro for chest pain causes headaches and lightheadedness (R. at 290).  Furthermore, Dr. Joslin, another treating physician, stated on September 13, 2005 that plaintiff suffers from "debilitating headaches" (R. at 306).  Plaintiff testified that when she takes her nitro medication it gives her "terrible headaches" and make her "dizzy" (R. at 333).  Plaintiff indicated that she takes the nitro medication 1 or 2 times a week (R. at 333).  The ALJ did not discuss the opinions expressed on this subject by Dr. McKinley or Dr. Joslin, which were corroborated by plaintiff's testimony.

Medical opinion evidence of debilitating headaches could support a finding that plaintiff's migraine headaches have more than a minimal effect on plaintiff's ability to do basic work activities.  An ALJ is required to discuss significantly probative evidence which he rejects.  Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).  Furthermore, the court should not engage in the task of weighing evidence in the first instance, Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996);

Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998),
but should review the Commissioner's decision only to determine
whether his factual findings are supported by substantial
evidence and whether he applied the correct legal standards.
Clifton, 79 F.3d at 1009.  In the absence of ALJ findings
supported by specific weighing of the evidence by Dr. McKinley
and Dr. Joslin regarding plaintiff's headaches, and given the
clear relevance of this evidence to the question of whether
plaintiff's migraine headaches are a severe impairment, this case
shall therefore be remanded in order for the ALJ to consider the
evidence of these treating physicians when determining at step
two whether plaintiff's migraine headaches are a severe
impairment.

**IV.  Did the ALJ give proper consideration to the opinions
expressed by Dr. McKinley, and Dr. Joslin, plaintiff's treating
physicians?**

Both Dr. McKinley and Dr. Joslin provided opinions regarding
plaintiff's RFC.  The ALJ discussed their opinions as follows:

> Charles Joslin, M.D., filled out form stating
> that the claimant could frequently and
> occasionally lift 15 pounds, stand and/or
> walk continuously for 15-45 minutes and could
> stand less than I hour in an 8 hour work day.
> The claimant could sit for 1-2 hours
> continuously and inconsistently marked that
> she could sit for only 1 hour in an 8-hour
> work-day. Dr. Joslin also marked that the
> claimant was limited in [her] ability to push
> and/or pull. [She] could occasionally climb,

balance, stoop, kneel, crouch, crawl, reach
and handle. The claimant could never have far
acuity or depth perception and [she] could
occasionally finger, feel, see, have near
acuity, speak and hear. The claimant should
avoid any exposure to extreme cold, extreme
heat, hazards, and heights. The claimant
should avoid moderate exposure to
wetness/humidity, dust/fumes, vibration,
hazards, and heights. Further, the claimant
will need to lie down or recline due to pain
for 10-20 minutes at a time 4-5 times per
day, according to Dr. Joslin (Exhibit 16F).
Jeffery McKinley, M.D., filled out a form
inconsistent to Dr. Joslin, with lifting
limitations of 10 pounds, sit for 30 minutes
at a time for a total of 2 hours and
unlimited pushing and pulling. Dr. McKinley
marked that the claimant could never perform
several postural actions. Additionally, and
inconsistent with the opinion of Dr. Joslin,
Dr. McKinley was of the opinion that the
claimant did not need to lie down or recline
to alleviate symptoms during an 8-hour work
day. Dr. McKinley marked that the claimant
took narcotic pain medication that would
cause a decrease in her ability to
concentrate (Exhibit 13F). Both of these
opinions are inconsistent with the medical
record and claimant's own statements and are
given very little weight. Claimant testified
she has not seen Dr. Joslin for more than 2
years when she testified at the supplemental
hearing. She also testified that she did not
nap every day but did nap 3 to 4 times a week
for ½ to 1 hour so she can get more housework
done. She testified she can sit 3 hours
without a break which is inconsistent with
both doctors' opinions. She also testified
she can stand ½ to 1 hour before she becomes
tired and needs to take a break. But she also
stated on her activities of daily living form
that in addition to working part-time (3 to 4
hours a day) she performed housework and
caring for family 30 to 40 hours a week. The
claimant reported to the agency that she
cares for others 5-6 hours per day by cooking
and doing laundry. The claimant reported she

cooks 12-15 times per week and requires no
help. She also stated that she sleeps 6-7
hours per night, although she stated she has
trouble going to sleep. The claimant does her
own laundry, about 25 loads per week that she
washes dries and folds. The claimant stated
that she vacuums, mops, dusts, does dishes
and cleans the bathrooms, although she needs
help moving heavy furniture (Exhibit 6E)...

Considering the claimant's diagnosis, her
medical advice and her own activity level,
the evidence does not support the level of
exertional limitation characterized by Dr.
Joslin or Dr. McKinley. Further, the form
from Dr. Joslin is internally inconsistent as
to how much time the claimant can sit and the
2 doctors do not agree on the limitations.
Although it is recognized that the record
establishes Dr. Joslin and Dr. McKinley had a
treating relationship with the claimant and
their opinions must be accorded controlling
weight under some circumstances (CFR 20416.
927, CFR 20 404.1527 & SSR 962p),
it is specifically noted for the reasons
stated above that their opinions are not
consistent with the medical record or
claimant's own statements and are given very
little weight...Additionally, the objective
medical tests performed have shown
improvement in the claimant's condition. Dr.
Alex after examining all the medical record
was of the opinion that claimant had no
limitations with regard to her ability to sit
or stand and walk. This opinion is supported
by the medical record and is more in line
with claimant's own statements and is hereby
given substantial weight along with the rest
of the limitations as set forth in 15F. The
decision regarding disability is reserved to
the Commissioner based on all the evidence
(SSR 96-5P). Considering all of the above,
the Administrative Law Judge is not persuaded
by Dr. Joslin's or Dr. McKinley's opinions to
the extent that they intended to assert
complete disability under the Social Security
Act.

11

(R. at 19-20).

A review of the ALJ's analysis, as set forth above, indicates that the ALJ referred to the RFC form filled out by Dr. Joslin, dated September 13, 2005 (R. at 305-306, hereinafter referred to as the 2nd form).  However, not mentioned by the ALJ, and also contained in the record, is another RFC form filled out by Dr. Joslin, which is also dated September 13, 2005 (R. at 293-294, hereinafter referred to as the 1st form), but which contains many different findings than those on the other RFC form of the same date.  For example, the 1st form states that the plaintiff can never perform climbing, balancing, crouching, or crawling, while the 2nd form indicates that plaintiff can occasionally do all of them (R. at 294, 306).  The 1st form indicates that plaintiff can sit continuously and throughout an 8-hour day for 3 hours, while the 2nd form indicates that she can sit continuously and throughout an 8-hour day for 1 hour (R. at 293, 305).  The 1st form also states that plaintiff can lift 10 pounds occasionally and 5 pounds frequently, while the 2nd form indicates that plaintiff can lift 15 pounds occasionally and frequently (R. at 293, 305).  Finally, the 1st form indicates that plaintiff can frequently engage in fingering, feeling, seeing with near and far acuity and depth perception, while the 2nd form indicates that plaintiff can never engage in far acuity or depth perception, and can only occasionally engage in

12

fingering, feeling, and seeing with near acuity (R. at 294, 306).

The ALJ's discussion of Dr. McKinley's opinion is in accordance with an RFC form signed by Dr. McKinley on June 17, 2005 (R. at 284-285, hereinafter referred to as the 1st form). However, not mentioned by the ALJ, and also contained in the record, is another RFC form filled out by Dr. McKinley on September 6, 2005 (R. at 289-290, hereinafter referred to as the 2nd form). These two forms also contain many different RFC findings. For example, the 1st form states that plaintiff can occasionally and frequently lift 10 pounds, while the 2nd form states the plaintiff can occasionally and frequently lift 15 pounds (R. at 284, 289). On the 1st form, it states that plaintiff is unlimited in her ability to push/pull, but the 2nd form states that plaintiff is limited in her ability to push/pull (R. at 284, 290). The 1st form states that plaintiff can never climb, balance, stoop, kneel, crouch, or crawl, but the 2nd form states that plaintiff can occasionally do all of these postural maneuvers (R. at 285, 290). The 1st form states that plaintiff does not need to lie down during an 8 hour day, but the 2nd form states that plaintiff needs to lie down multiple times during an 8 hour day (R. at 285, 290).

The ALJ discounted the opinions of Dr. McKinley and Dr. Joslin because they are inconsistent regarding numerous limitations. However, whether they are inconsistent or not

depends on which of Dr. McKinley's forms you are comparing with
which of Dr. Joslin's forms.  For example, the ALJ stated that
Dr. Joslin and Dr. McKinley were not in agreement on the need to
lie down during an 8-hour workday.  While both of the forms
filled out by Dr. Joslin indicated that plaintiff needed to lie
down (R. at 294, 306), Dr. McKinley indicated on the 1st form
(dated June 17, 2005) that plaintiff did not need to lie down,
but indicated on the 2nd form (dated Sept. 6, 2005) that she did
need to lie down multiple times during the day (R. at 285, 290).

The ALJ found that plaintiff's testimony that she can sit
for 3 hours is inconsistent with the opinions of both treating
physicians (R. at 19).  Plaintiff testified that she can sit for
2-3 hours without a break, and sit for 2-3 hours in an 8 hour day
with periodic breaks (R. at 379-380).  This testimony is
inconsistent with the opinions of Dr. McKinley as expressed on
both the 1st and 2nd form (R. at 284, 289), and is inconsistent
with the opinion of Dr. Joslin as expressed on the 2nd form (R.
at 305), but plaintiff's testimony is consistent with the opinion
of Dr. Joslin as expressed on the 1st form (R. at 293).  However,
the ALJ never discussed the 1st form filled out by Dr. Joslin.

The court has no idea why the ALJ only referred to one of
the RFC forms filled out by each treating physician, while
ignoring the other one.  At the hearing on September 13, 2005,
plaintiff's counsel presented the 2nd form from Dr. McKinley to

14

the ALJ, noting it is a new form (R. at 328-329).  The ALJ

admitted it into the record (R. at 329), but in his decision,

only referred to the 1st RFC form filled out by Dr. McKinley.

An ALJ must evaluate every medical opinion in the record.

Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the

determination of issues reserved to the Commissioner, such as

opinions regarding: whether an impairment meets or equals a

listing, plaintiff's RFC, whether a plaintiff can do past

relevant work, how age, education, and work experience apply, and

whether a plaintiff is disabled, treating source opinions are not

entitled to special significance or controlling weight.  Soc.

Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to

the Commissioner), 1996 WL 374183, at *2.  However, even on

issues reserved to the Commissioner, including the RFC

determination and the ultimate issue of disability, opinions from

any medical source must be carefully considered and must never be

ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at

*2-3.  It is clear legal error to ignore a medical opinion.

Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4,

2005).  The ALJ clearly erred by only considering 1 of the 2 RFC

forms filled out by each of the two treating physicians.  As

noted above, the court will not engage in the task of weighing

evidence in the first instance.  Therefore, the case shall be

remanded in order for the ALJ to consider both of the RFC

15

opinions provided by the two treating physicians.

Furthermore, in the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004), the court discussed the duty to recontact a treating physician or psychologist:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); <u>see</u> <u>also</u> <u>McGoffin</u>, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. <u>White v. Barnhart</u>, 287 F.3d 903, 908 (10th Cir.2001).

The court in <u>Robinson</u> then stated that if the ALJ concluded that if the treating physician failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medication on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it. 366 F.3d at 1084.  In addition, SSR 96-5p states the following:

> Because treating source evidence (including
> opinion evidence) is important, if the
> evidence does not support a treating source's
> opinion on any issue reserved to the
> Commissioner and the adjudicator cannot
> ascertain the basis of the opinion from the
> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.

20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) make clear that
the ALJ "will" seek additional evidence or clarification when the
report from the medical source contains an ambiguity or conflict.
In this case, Dr. Joslin filled out 2 RFC forms, with the same
date, but setting forth many different findings regarding
plaintiff's RFC (R. at 293-294, 305-306).  The ALJ only discussed
the 2nd form filled out by Dr. Joslin.  Dr. McKinley filled out 2
RFC form less than 3 months apart, which set forth many different
findings regarding plaintiff's RFC.  The ALJ only discussed the
1st form filled out by Dr. McKinley.  Given the clear conflict in
the 2 RFC forms filled out by the same physicians but with many
different findings, this case shall be remanded in order for the
ALJ to recontact the treating physicians regarding the many
conflicts contained in the RFC reports from each treating
physician.

The ALJ gave the opinions of Dr. McKinley and Dr. Joslin
very little weight because they were inconsistent with and not
supported by the other evidence in the case (R. at 19, 20).  SSR

96-5p indicates that when the evidence does not support a
treating source's opinion on any issue reserved to the
Commissioner, and the ALJ cannot ascertain the basis for the
opinion from the record, the ALJ must make every reasonable
effort to recontact the treating sources for clarification of the
reasons for their opinions.  Likewise, in <u>Robinson</u>, the court
indicated that if the treating source failed to provide
sufficient support for his RFC limitations, the ALJ should
recontact the treating physicians for clarification of their
opinions before rejecting them.  Therefore, when Dr. McKinley and
Dr. Joslin are recontacted, the ALJ should also seek
clarification of the reasons for their opinions.

**V.  Did the ALJ err in his step four findings?**

     At step four, the ALJ made the following findings:

          The vocational expert testified that the
          claimant has past work as a bookkeeper and
          waitress/bartender among others. She also
          testified that a hypothetical individual with
          the same age, education and residual
          functional capacity as the claimant could
          perform both those jobs. The vocational
          expert's testimony was consistent with the
          information contained in the Dictionary of
          Occupational Titles pursuant to Social
          Security Ruling 00-4p.

          In comparing the claimant's residual
          functional capacity with the physical and
          mental demands of this work, the undersigned
          finds that the claimant is able to perform it
          as generally performed.

(R. at 21).

At step four, the ALJ is required by social security ruling (82-62) to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  <u>Henrie v. United States Department of HHS</u>, 13 F.3d 359, 361 (1993).  At each of these three phases, the ALJ must make specific findings.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).[3]  An ALJ can comply with these

---

[3]In <u>Winfrey</u>, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ.  The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged.  The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).[4]  At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work.  When the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be

---

Winfrey, 92 F.3d at 1025.

[4]The ALJ's findings in Doyal were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

Doyal, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

remanded in order for the ALJ to make the specific factual findings regarding the demands of claimant's past relevant work. Clardy v. Barnhart, 2004 WL 737486 at *6 (D. Kan. Apr. 5, 2004).

On remand, the ALJ shall comply with these requirements in making step four findings.  Unlike the case in Doyal, the ALJ in this case did not make any findings regarding the physical and mental demands of plaintiff's past work; the ALJ simply made the conclusory statement that he compared plaintiff's RFC with the physical and mental demands of plaintiff's past work.

Defendant argues that any error at step four is harmless error because the vocational expert (VE) testified that plaintiff could perform other jobs in the national economy.  Although the VE testified as to other jobs in the national economy that plaintiff could perform, the ALJ did not make any findings at step five.  Because this case is being remanded for other reasons, the court will offer no opinion on the harmless error argument.  However, the court would suggest that, upon remand, the ALJ could make alternative findings at step five even if the ALJ finds at step four that plaintiff can perform past relevant work.

Finally, the parties argued as to whether plaintiff's past work as a bookkeeper and a waitress/bartender was performed at the substantial gainful activity (SGA) level, and therefore

whether it qualifies as past relevant work.[5]  In fact, defendant concedes that plaintiff's past work as a bookkeeper was not performed at the SGA level, but argues that her past work as a bartender/waitress was performed at the SGA level (Doc. 10 at 2 n.2, 24).  This issue was not addressed by the ALJ in his decision.  Because this case is being remanded for the reasons set forth above, the ALJ at step four shall make findings as to whether plaintiff's prior work qualifies as past relevant work performed at the SGA level.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

---

[5]  Past relevant work is defined as work that (1) occurred within the past 15 years, (2) was of sufficient duration to enable the worker to learn to do the job, and (3) was substantial gainful activity.  Wise v. Barnhart, 42 Fed. Appx. 331, 333 (10th Cir. July 9, 2002); Jozefowicz v. Heckler, 811 F.2d 1352, 1355 (10th Cir. 1987); 20 C.F.R. §§ 404.1565(a), 416.965(a).

Dated at Wichita, Kansas, on August 31, 2007

                          s/John Thomas Reid
                          JOHN THOMAS REID
                          United States Magistrate Judge